This case is about the application of the South Carolina Identity Theft Protection Act, which was passed to prevent people in South Carolina from becoming identity theft victims through the compromise of their personal information. One of the primary ways it does this is through a part of the statute that is found at 3720.180 subsection 4, which makes it illegal to require a consumer to use his social security number or a portion of it containing six digits or more to access an Internet website unless a password or unique personal identification number or other authentication device is required to access the Internet website. In this case, it is undisputed, at least up until this point, and as alleged in the complaint, that is exactly what TrustedID did. It set up a website in 2017 called TrustedID Premier, and that was in response to the Equifax breach. TrustedID is a subsidiary of Equifax. The purpose of it was to comply with South Carolina's data breach notification statute, which requires people to be notified if they're a victim of a data breach. The website, and again this is alleged in the complaint, required that the consumer who accesses it input his last name or her last name and six digits of the social security number. It didn't require any other PIN, and it didn't require any other authentication device. Mr. O'Leary, the plaintiff, was one of at least 5,000 people in South Carolina who input his six digits of his social security number to the site to access it so he could find out if he was a victim of Equifax's data breach, and he alleges that this violated the law in South Carolina. He filed suit in Richland County, South Carolina. It was removed at the district court. The defendant filed a motion to dismiss, which was based at that time on three, not on the statute itself or that the conditions of the statute weren't met, because they clearly were at least in terms of the way the case was pled, but on three exceptions. The district court rejected two of those exceptions, but found that one of them applied, and the one that they found applied was what they call the authorized service exception. It's very short, and I'll read it. It says that this section does not apply to the opening of an account or the provision of or payment for a product or service authorized by the consumer. The very narrow issue before this court, Your Honor, is whether that exception applies. Let me take you to a preliminary threshold point. You seem to be uncertain in the lower court, at least for a while, on whether or not there was jurisdiction. I'll have to say, having done this for more than a few years, I think this is the first time I've ever seen a plaintiff who questioned the jurisdiction for his own suit. What's your position now? Of course. Our position is that the district court does properly have jurisdiction. It has Article III standing. It found that in its order, and we think that's correct, and the defendant doesn't dispute that either. But it's worth mentioning, why would we raise that issue? First of all, we filed in state court and we removed a district court, so there was that issue. But secondly, as this court has probably seen in cases like Ramirez versus TransUnion, just very, very recently in the GoDaddy case in the 11th Circuit, it's very possible to get very, very far down the road and take up a lot of the court's recesses and the party's resources to get to a place only to be dismissed on Article III grounds, which can occur at any time. So if this court ... We agree that the district court has standing, but that's something that ... Well, you would be the one with standing. I apologize. Not the court. Yeah, I'm sorry. The court has jurisdiction to hear it and that we have standing to be in district court. We don't disagree with that, but we thought, and this is probably a very clumsy way of trying to raise it, but that we should probably raise it as early as possible because we've seen, specifically in Ramirez, where the case gets past trial, past class settlements, all the way up to a certain point, and then a lot of the work is undone because there's a finding of that Article III jurisdiction doesn't exist, which, of course, can be raised at any time. So counsel, if we have jurisdiction, then you move into the merits. The district court seems to interpret the exception that's on appeal here. It reads it to mean, to say the same thing. You may have a disagreement, but that seems to flow from just the grammar of that. So the question then, at least in the district court's mind, was what does provision of service mean? When we interpret statutes, we generally look to 2008, when this one was interpreted, to see what the ordinary meaning of that phrase, provision of services, was. District court looked at some dictionaries to do that. You then have some arguments about alternative meanings and some criticisms about that, but I didn't really see your argument as framed as to what the ordinary meaning of those words were in 2008, which I believe is what we're supposed to do. So A, tell me if I'm wrong in saying that's what we should be looking at, and B, if it's not, what's the basis for saying that was not the ordinary public meaning of that phrase at the time it was enacted? Well, I guess to answer the first part of your question, and I do think that you are wrong with that, very respectfully, because I believe that the definition that applies is under 37.2.105. So you go to the statutory definition. I think that's the first place you look, Your Honor, is the statute itself. And I think where the district court got it wrong was it looked at that and said, okay, that's part of the credits, the whole thing's part of the Consumer Protection Code, including the Identity Theft Protection Act. I think the court looks at that and says, well, wait a minute, that's just for credit sales. But if you read 37.2.105.3, which has this services decision, and actually the statute that, or right above it, 37.2.103, it says the following definitions apply to this title. This title's Title 37. And then the definition it gives of services, which I recognize is a different word slightly than service, but under Title 2 of South Carolina Code of Laws, we would probably read that as the same thing. It says services includes work, labor, or other personal services, and then privileges with respect to transportation. Why wouldn't personal services get us right back to the same place? I think personal services, maybe that's where you start looking at the ordinary meaning of that. And I think personal services, if you read it like the court read it, it could be anything. It could be everything. And that exception becomes a black hole that eats the statute at that point. But the way you argued it in your brief, you seemed to equate what the district court said, which was defining service, or maybe personal service, to be use, benefit, and help as synonymous with any website that provides information for free. And it seems to me that, help me with that, because help, use, benefit seems to connote some sort of personal benefit of an individual. It seems, at least from a language standpoint, to be that way. And you seem to be making an argument about something other than that definition. Maybe I'm misunderstanding you, so if you could help me explain. I think that, if I can try to explain it, I think that help, use, benefit is from the sort of the ordinary Webster's Dictionary view of the word, if I understand correctly what the court's asking me. Whereas the statute 37-1053 is much more specific. The only thing, this isn't a hotel, this isn't insurance, this isn't any of these other things that are under the statute, which again is part of the Consumer Protection Code, which is all about consumer transactions and things that are generally in commerce. So the only thing that that sort of general definition could fit under, I think, is maybe personal services. But if you read it that way, particularly with the Consumer Protection Code, which is generally read to find protection for the consumer, then that kind of an exception does sort of swallow the entire statute, because there's really nothing. You say, well, is it helpful? Sure. That could be anything. And so then the statute doesn't really have any meaning anymore. And so the other thing I would point out is that it's a... Why do you say it swallows it? I mean, if you input this Social Security information because you want something and you get it in return for that, why isn't that a personal service? Because I think what personal service refers to is something in a more commercial context, at least under the way that I read 3721053. Again, I think that would be a very, very broad definition of personal service to include any... You would have to say that I've gone to a website, there's information on that website, and that is a personal service. There is no website that you could visit where that wouldn't be the case. And that's why we say that the exception would swallow the rule. Counselor, you... Don't worry if you're not, because this is kind of maybe not that common a thing. But are you familiar with the statutory interpretation tool of corpus linguistics? I'm probably not familiar with the tool. If it were defined, I would probably be able to answer it. I'm familiar with some other ones that I think apply here, which is... It's not a canon. It's a way of doing some research to find out the ordinary meaning. So don't worry about it. It's not in the briefs, and I just was curious as to whether you had a view from that standpoint. No, sir. I took Spanish in high school, so that wouldn't... Mr. Maxfield, before you sit down, and I hate to bring you back to the beginning of your argument... Of course. I still have a question about whether, I mean, this complaint actually alleges an injury in fact sufficient to warrant a finding of standing. As I understand it, the claim here is that there's a heightened risk of identity theft as a result of inputting six digits into this program. But, I mean, you're familiar with our Beck case, where we concluded that the theft of information similar to this, standing alone, is insufficient to warrant Article III standing. So we have that case, and I cited... I wrote it, but you could be on this circuit. And I just have a question about why... What is it beyond this risk of identity theft that sort of elevates this case above Beck and warrants a finding of standing? I mean, what... For example, if... I think you would concede that if the company had requested the input of five digits, that wouldn't be a problem. It seems pretty arbitrary then to suggest that six digits makes all the difference. If I might address the last part first, six digits makes a very big difference because if you think of what your Social Security number is, if you have a three-digit prefix on it, that is typically geographic for people born before 2000. So if I know the first three of your Social Security number, I can... If I know where you're born, I can say, like, you're born in South Carolina, you're going to have probably one of six combinations if you're born before 2000, and I get the last six from a brute force attack or any sort of an attack on a website, I've got your Social Security number. And so the reason that that six is a number that's important is because specifically of that. Now, if you use a separate authentication device or a separate PIN, it takes that away from that danger. I haven't answered your main question about standing. My argument would be that there is a privacy right, and the court found, you know, akin to intrusion upon seclusion, invasion of privacy, intrusion upon seclusion, that recognizes we do have a right in that. It's not the same as, like, the argument, like, under some FACTA cases where, well, something could happen in the future, identity theft or data breach cases where this is a possibility of something happening in the future. Something has now been taken and given up by somebody that they shouldn't have had to give up. Well, didn't that happen in Beck? Didn't that happen in Beck? That, Your Honor, is correct. That did happen in Beck. I believe there is a case that is from just very recently in the Fourth Circuit that's Gary versus James Farron where it appeared that they did recognize an interest in privacy that's consistent with what the circuit court, the district court found here. Again, we're not, I'm not here to contest that, but those are questions that have been raised at some point as we move forward, and I would rather it be raised now than later, so I appreciate that. Thank you. All right. Thank you very much, Mr. Maxwell. You've got some rebuttal time. Mr. Parrish? Thank you, Your Honors. Ashley Parrish on behalf of Trusted ID. In light of what we've heard this morning, what I thought would be helpful to the court is allow me to briefly address the question you posed in your order about certification. Then let me, Judge Quattlebaum, turn to the merits and explain why your questions we completely agree with. We think personal services doesn't help him. It hurts him, and this clearly is a service. The idea that there is, it renders the statute meaningless. We have an easy answer to that. And then last, Judge Diaz, let me address the standing point because we do think particularly at this stage of proceedings, given the mischief that would occur, and in light of the Supreme Court's recent Ramirez decision, there is an easy path for this court to find standing without breaking new law. So let me start with just the certification question. I just wanted to remind the court that the way that you apply that is you take a look at the available law, and you ask yourself whether it's possible to reach a reasonable answer. The language that's used in the court's case is, is the available law clearly insufficient, and can we render a reasoned and principled conclusion? Oftentimes when you certify a case to the state Supreme Court, it's in the case of state common law, where it really is a question of whether there's a standard in the common law, and there are no on-point decisions. Here, of course, the available law is the statute, and all you're applying is traditional tools of statutory construction. We don't think those traditional tools are difficult to apply here, and therefore we just urge you to apply them. We don't think this is a situation where you need to bother the state Supreme Court. Obviously, we don't mind going there. We'd be happy to argue with them, but you've already had now argument and full briefing. We don't think the statutory question here is difficult. You can certainly reach a reasoned and principled decision. That takes us to the merits, and I'll just address two, because they reinforce each other. The question here really is, the first is, he accessed the website. Then when he went to the website, he took a tool and used that tool, entered his partial Social Security number, and received a personal service in return, and the reason he received that personal service was to investigate whether there had been fraud. That falls within two exceptions to the statute, both B-3 and B-4. If you just walk through the allegations of his complaint, it's quite clear that he's alleged that there's a service. His amended complaint says that he entered the portion of his Social Security number, quote, in exchange for access to information possessed by trusted ID. The district court, I think, took your suggestion at that point and said that the plaintiff had essentially pleaded himself out of a case. Correct. Correct. He actually specifically, emphatically says that, alleges that trusted ID, quote, rendered services to O'Leary as, quote, necessary for the protection of his identity or property, and that we provide identity theft protection services. Now, he is no longer pressing those claims, but, of course, when you abandon or forfeit claims, you just forfeit the legal theories. You don't forfeit the factual allegations. But even if you just take a look at that, it is services, and I'd point you to sort of a hypothetical. I'd point you to a case and then just common sense. So the hypothetical is when you go to the Fourth Circuit's website, you're accessing public information. You might make the argument that's a public service. I think that's a stretch, but you're just If you had a tool that I could then go to on your website where I could find out whether there's been any bar complaints issued against me in the last year, and I typed in my Social Security, your partial Social Security number, and it came back with information as to, yes, you are subject to bar complaints, that would be a personal service that you are providing to me. That's what's really happening here is we had a, the trusted ID had a general website and then you'd use the tool in order to determine whether you were somebody subject to the breach or not. So if you had to, if the issue was about the website in general that just had general information, that might swallow it. But when you have to go the additional step to have something that has almost a personal benefit, that's where you're suggesting the difference lies? You're right. That's exactly right because the definition of service, as we point out and as the District Court found, is a sort of a useful act for the benefit of someone else. Well, that's, I mean, the District Court did that, and I'm not saying there's a difference here in 2000, using 2021 sites, and I mean, I've actually gone back to the 2008, and it's, there's a variety of meanings. That's one, and that's fair, but I mean, there's, you know, maybe that's the right one. I think that's, you know, one way to look at it. But there's, you know, I think the time period matters, and I think, you know, why that one and not others matter is worth doing. Your Honor, so let me just make sure. I think I agree with everything you've said in the sense that I agree that for statutory interpretation purposes, you do want to look at the time period. I just don't think that in this context here of interpreting what services means, it really makes that difference. I agree with you. There are lots of definitions, but I do think that the definition I've offered you to here is consistent, and that takes me really to my case, the Ninth Circuit, to look at. It's an almost identically worded statute, and what the court recognizes there of the Ninth Circuit is that the statute, it's all about logging onto a website. It's not the next act of asking for information and receiving it in return, and that's the whole point, which is what this statute's designed to do in the start is to say as long as you are out there shopping on the Internet, moving around the Internet, we're not going to have Social Security numbers or partial Social Security numbers being a way to access those things, but then it's not even really a carve out. It just says the statute shall not apply in circumstances where there's personal services or services being received that are authorized by the consumer, and that's exactly what we have here, and the district court was correct about that. I would just say that if you had any question about that at all, and I know the district court felt like this would require more work. We don't think it does. You could also apply it before, which is that the question there is what was the purpose of using this service, and it was to investigate fraud, and the only argument that the other side raises is he says, well, trusted ID wasn't investigating fraud, but there's nothing in the statutory language, if you look at the literal language, that makes a difference as to who it is. What it's talking about is the act, and so here's what's happened is that there is a service that is being provided for us to allow Mr. O'Leary to investigate whether he was subject to the data breach. That clearly falls within the broad literal language of both B3 and B4, and we think that's all the court needs to do in order to resolve this case. I'd love to answer any more questions that you might have about that. Otherwise, I'll just turn to the standing question, if that would be helpful. So on standing, your honors, I think the way to look at this is a couple of things. First, I would start off by reminding the court, and I know there's no debate about this, but there was no 12B1 motion that was filed here, which changes things at the pleading stage. So it was a 12B6. Both sides agreed that there was standing, and both sides recognize that what that means is that they can allege general allegations and their inferences in their favor. Now, Judge Diaz, I completely agree with you. You have to do more than that, but I think the TransUnion Ramirez case is very important, and I'd also make the point that it's different from some of these other similar cases that aren't quite the same. And the reason is that in many of these cases, so you take a look at the Jeffries case in the D.C. Circuit, which talks about intangible harms, often that relates to things like credit cards, where the question is what is the common law right, and there's a debate as to whether that's a breach of confidence or not. What's unusual about the social security context is that social security numbers have been recognized to be something that everyone has a privacy interest in, and therefore there's a privacy right, and this Court has recognized that as well in other contexts. And the Ramirez case specifically says that when you're taking a look at those types of actions that are permissible for Congress because they, to create a statutory right, and that there's a presumed intangible harm because they match a cause of action, you could bring a common law. Justice Kavanaugh in his majority opinion specifically says disclosure of privacy information falls within that category. So what we would say to the Court is that this case is quite easy to resolve because you say this is a privacy interest, he's alleged an invasion of privacy. And if you had any question about that at all, I'd also point out that although he's alleging that there are penalties in 1,000 and 3,000, he also alleges in his complaint that each class member suffered $100 of actual damages. Well, there's no statutory penalty for $100, so he's pleading actual damages of $100. He would tell you again that that relates to his other claims that he's now dropped. But again, it underscores the point that he thinks that there's an invasion of his privacy here worth at least $100. Can I ask, sorry to interrupt you, but so as I understand the process in this case is the plaintiff voluntarily inputted this information in order to get some assurance that his credit was okay. And so in that sense, it's not the same thing as someone taking information from another. And in reading Ramirez, the focus seemed to be on the dissemination of that admittedly private information, social security numbers, although six digits is not the complete number, to a third party. So how is that happening here? So Your Honor, the way we would put it, and I know I'm walking a fine line here, but it's between the difference between establishing standing of a really meritless claim. And so the thing is his theory as we understand it is that by having to input the social security number, something that he held private, his privacy interest was injured because he was further exposed to the risk of disclosure. And that's why we cite you to the D.C. Circuit Jeffrey's decision where it says looking at that type of intangible harm. Now, of course, that's in the context of a credit card, but it's the risk of that your privacy information will be further disclosed. That's a sufficient harm. But didn't the Supreme Court in Ramirez make a distinction between credit reports that have been disseminated to a third party and those that were just sitting in the agency's files and said that's akin to someone writing a defamatory letter, putting it in a box and never disclosing it? It seems to me that's what we have here. You know, I don't think that's the same because of the nature of his allegations. I would also just urge the court to look at the problem that we have here that's driving this, which is that we have a case that was properly removed to federal court based on CAFA because he's alleging significant damages based on the penalties. And then he comes to the court and he's not willing to say that he hasn't suffered an injury. He says he has suffered an injury. We all agree on that. But what he wants to do is have the court then go ahead and remand it so he can then proceed in state court and resurrect the claims that he has that he's now dropped on the theory that when we're back in state court we can now no longer litigate this case in federal court. And what I'm worried about, Your Honor, is that this creates a strange loophole. And so in a situation like this where there is a privacy interest and you can draw the path to say that there's been a harm here and he's alleged a harm and he's alleged $100 concrete injury and it fits within the intangible, Judge Diaz, if this was a more serious case and you were writing some published opinion that tried to really apply Ramirez in a significant way, there are a lot of issues about Ramirez and how it gets applied in subsequent cases. We recognize that. We just don't think this is the case to apply it. We think there is a path for the court to say they're standing and to put this case to an end because it really is clearly meritless and it's barred by the statute. But, Counsel, I mean, you may be accurately describing the practical effect of an adverse of a decision that there's not standing. I'm not quarreling with that. But that really shouldn't be the basis of what we decide. I mean, we've got a constitutional obligation. Our courts are limited jurisdiction. So I think either you have it or you don't. And to say if we don't, that puts us in a bad spot may be true. We may even have some sympathy for that. But that's kind of beside the point, right? Well, I guess I agree, Your Honor, that we either have it or we don't. What I'm saying is we have it. And I think that there are other ways of looking at the case where you can spin off more difficult situations and then you can say, you know, we can come into hypotheticals. Judge Diaz, my point to you is that I realize there's that language in the Supreme Court's decision. I don't think it changes the thrust of the opinion or this Court's cases that say when you're talking about a privacy interest, not in a situation where you're talking about disclosure but you're talking specifically about a privacy interest, that we have it. And that's what I'm saying. The Social Security number, there's both the idea that there's a privacy interest and there's a private interest in not disclosing it. He's alleged that there's a risk of further disclosure, and that's sufficient under the case law. So help me with our Beck decision. In that case, as I recall, it was medical information that was at risk of being disclosed, which is pretty private, I think. And we said that the mere fact that a laptop computer had been stolen without war, without an actual showing of the risk of disclosure, wasn't enough to warrant Article III standing. Why is that case different than this one? So I think, Your Honor, this gets us back to the D.C. Circuit's Jeffries case. And it's a question of whether you believe that by implementing the statute, when the Court is focused on Jeffries, the D.C. Circuit says, look, the Congress has recognized here that the risk of disclosure it creates is that there will be a further disclosure. And Congress, in that sense, unlike in the context of just medical disclosure, it has created an added right here, and that right is not only to be protected against disclosure but the further risk. And so what it does... But that's a bare statutory right. You need something more than that, right? Well, Your Honor, the way I read the decisions is what you need is you need first to have the statutory right in the context of Congress has recognized the ability to sue. Then you need to tie it back to a common law cause of action that allows you to say that there would actually be harm. But then after that, you have to go back to the statute again and say what exactly was it that Congress did? What was, not only was the history, so the first analysis under the case was look at the history. Was there a history? But then second, what specifically did Congress do? What the D.C. Circuit does in the Jeffries case is it says when we look at the specific statute, it goes beyond just the idea that there's a protection for your privacy, right, but it goes further and says we want to protect you from the risk. Because there doesn't have to be a perfect match between what happened at common law and what happens at the statute, the Court says that's enough to allow you to go forward with a lawsuit. And there are, we acknowledge there's a split in that D.C. Circuit, but we don't think the Court needs to resolve that split. We think the Court can follow the D.C. Circuit's logic here because what's happened is that it's clear, and let me put another way to think about this, is that is there really a case or controversy? That's the first step of all of the standing analysis between the parties. And when a party has alleged in his complaint that there's $100 of damages that he has suffered as a invasion of the privacy because of the further risk that was added to following the Jeffries line of decision, we think that's sufficient. One last thing on the merits. Can you have a service, can you provide a service when you're obligated to provide the information? You have, as I understand it, a legal obligation to notify or inform someone about whether there's been some breach. If that's the case, can you still be providing a service? So Your Honor, I'm really glad that you asked that because I made a note when he said that in his opening remarks. That is just not the case. This service was provided not consistent with our obligations under the data breach. That notice was provided through notice publication in each of those individual cases. This was an additional service that was provided. And one of the key things that you can see from the district court's opinion in the briefing below is that we had no obligation to him. What we were doing is we were trying to address a situation where many people might not know despite . . . So you mean Trusted ID had no obligation as opposed perhaps to Equifax? Well, I would say that Trusted ID had no obligation, but I would also say that Equifax's obligation . . . They're the party, so that would be the relevant one. I totally agree, Your Honor. All I would say, though, is this was not a mechanism. The reason why your question is correct is because not only is it Trusted ID is a different party, but also Equifax fulfilled that obligation in many different ways. This was not part of fulfilling that obligation. There's no connection where some court said, okay, Trusted ID will now do this for you. This was purely provided by Trusted ID to help people out, and that's why it really was a service. Your Honor, it looks like my time is only up. Unless you have other questions, I'll just urge the Court that this case is not a difficult case. It fits within the plain language of the statute. I know you've had questions about standing. We think we've offered the Court a path to resolving that, and we also think on the certification question, because you can resolve this by just interpreting the statute, this isn't the type of case that you would usually certify to the Supreme Court. Thank you very much. Mr. Maxfield, you have some rebuttal time. Thank you, Your Honor. Let me first address something that my friend said about this sort of, I guess, being a minimal case, or something to that effect. One of the things I want to point out is that the District Court has made its ruling based on an exception that I'm going to return to in a second. That doesn't mean that what happened in the first place with this website being created that required South Carolina residents to put in their last name and six digits in their Social Security number, with no other authentication and no other PIN number, is any less reckless. That is exactly the conduct that the statute says, don't do this. And there's a reason that they say that. And so I would first of all point that out. The second thing that I would point out is that we're looking at the exception, the one that the court did apply, and we look at that and we say that the section doesn't apply to the opening of an account or the provision of or payment for a product or service authorized by a consumer. We've talked a lot about what's a service, but it's a two-part test. It also has to be an authorized service. And what the District Court found for authorization was the very act that Mr. O'Leary had put his Social Security number into the website in the first place. And if that's the... So why isn't that sufficient? Because if you read the statute that way, then there can never be a violation of it because anybody who's harmed by what the statute's designed to prevent immediately loses their cause of action by consenting to it. I mean, that would be a nonsensical interpretation of the statute. There's another Latin canon that I probably can't pronounce and don't So that the statute shall survive. And to interpret this exception that way and say that any time somebody goes to one of these, let's just say for the sake of argument, violative websites and puts their information in, as soon as they do that, they have no claim because they just authorized it. And by the way, everything's... Well, he authorized it because he wanted to get some information, and if he didn't want to get it, he didn't have to put his number in. But then there would be no violation of the statute that would be before the court right now. I mean, there would be no point in having a penalty part of the statute because nobody could ever be aggrieved by it. He wouldn't have any personal standing to sue. Well, isn't that the reason you would think that the legislature put this particular exception in there? I mean, if a person decides that this thing or service is of value to them, then they've made that decision, and they're willing to forego their privacy right to the extent of the information that's returned to them. I mean, if the court reads the statute that way, that that is that act of putting a social security number into a website that otherwise violates the statute, then that would be the correct interpretation of that. I don't think that's what the statute intends. There's no way the statute would have any practical significance in an important issue otherwise if that were the interpretation. The other thing that I would like to move on to, and of course there were three exceptions that were raised, and I think they can argue all of them at this stage. I don't think they can argue that we haven't made a prima facie case for violation of the statute based on what we've alleged in the complaint. But I do want to turn briefly to this fraud exception because what it actually says is that this section does not apply to the collection, use or release of a social security number to investigate or prevent fraud, and then it goes on to talk about some other things. Well, Mr. O'Leary's not collecting. The implication is that this statute applies to what Mr. O'Leary is himself doing in his own investigation. I mean, he's not collecting his own social security number. He already has that. He's not using, as the statute would require, his social security number to investigate fraud. He's allowing somebody else to collect it to do that. What I would say is that at the pleading stage, what they're actually doing or not doing is way, way, way beyond where we are at the pleading stage. We don't know the answer to that at this time. Discovery might reveal that. The Ruiz case, which was mentioned, was a case that was decided on summary judgment, and it was a very different case than this case for a number of reasons. One of them has to do . . . What's the . . . I mean, how is it not the case that Mr. O'Leary is investigating fraud through the breach of the Equifax database? I mean, he's seeking information about whether someone . . . It seems to me that very allegation is that he's seeking information to find out if someone has wrongfully obtained private information about them. How is that not the case for fraud? Because that horse has already left the barn. What horse has left the barn? Because the fraud . . . all this tool is returning is have you been breached or have you not been breached? And that's already happened. Which, if it's true, is fraudulent. And he's trying to figure out if he's been the victim of that, right? He is asking to be told whether he's the victim of that, whether he's included in this data breach. But the investigation of fraud, the fraud's happened in 2017 already. There's not . . . So because there's already been a determination that there was fraud, it's . . . I guess that's your point. Your point is there's already been a determination of fraud so that him inquiring as to whether he's been a victim of it isn't covered by that? Is that what I'm saying? It was. The district court found, Your Honor, he's just being told the result. That's what he's getting. There's not an investigation. It's just here's what happened in the past. That's what the district court found. I've got 39 seconds left. So what I'll say with that little bit of time is that all of these exceptions are the same as affirmative defenses. And the defendant bears the burden of proving those under this court's decision and other decisions in other places, specifically here, Goodman v. Praxair. And on the very last thing I'll say, on the suggestion that we've pleaded ourselves out of court, this is a complaint where, first of all, the mention of services doesn't occur until page eight of the complaint. There's just the use of the word services in a negligence claim. And specifically, that claim incorporates the allegations above it. But the claim that we rely on here doesn't incorporate any of the allegations. We specifically pled those in the alternative. At this stage of the proceedings, not only must the complaint be viewed in the light most favorable to the plaintiff, but all of the inferences must be viewed in the light most favorable to the plaintiff. And that's what we feel that the district court has done here, is that it's looked at things and made inferences from parts of the complaint that are unfavorable to the plaintiff. And that's not proper at this stage. So what we would ask is that the court affirm standing, or confirm standing rather, but reverse the district court's dismissal of the case. Thank you, Your Honor. All right. Thank you very much. We thank both counsel for their arguments today. As you know, our tradition is to come to the Wellwood Court and greet you in person, which our COVID restrictions don't let us do right now. So we hope you'll come back in the future when we can do that. And with that, we'll change counsel and be ready to hear argument in our next case.
judges: G. Steven Agee, Albert Diaz, A. Marvin Quattlebaum Jr.